UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
_____
                                 )
LIN LI QU (a/k/a/ Michelle       )
Ng) individually and as          )
Administratix of the Estate of Hiu )
Lui Ng (a/k/a Jason Ng), and as  )
guardian and next-friend of      )
their minor children, Raymond    )
Ng and Johnny Ng,                )
                                 )
            Plaintiff,           )
                                 )
      v.                         )    C.A. No. 09-53 S
                                 )
CENTRAL FALLS DETENTION FACILITY )
CORPORATION, et al.,             )
                                 )
            Defendants.          )
_____)
```

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

I.   Introduction

This case involves allegations of mistreatment and neglect of a federal immigration detainee, Hiu Liu Ng ("Jason"). Jason died of cancer, which was not diagnosed until just prior to his death. In the motion before the Court, the United States of America ("Defendant" or "United States") moves to dismiss the Second Amended Complaint filed by Plaintiff Lin Li Qu ("Michelle" or "Plaintiff")[1] for claims arising out of her

---

[1] Plaintiff is acting in her capacity as Hui Liu Ng's ("Jason's") surviving spouse, individually and as guardian and

husband's care while he was detained by Immigration and Customs Enforcement ("ICE").  The United States contends that the Court lacks subject matter jurisdiction to hear Plaintiff's claims under the Federal Tort Claims Act, 28 U.S.C. § 2674, ("FTCA") because Plaintiff did not comply with the required administrative notice provisions and Defendant did not waive its sovereign immunity with respect to the alleged wrongful conduct committed by its independent contractors.  Defendant also argues that Plaintiff's negligence claim fails to state a claim upon which relief can be granted.  See Fed. R. Civ. Pro. 12(b)(6).

II.  Factual Background

At this stage in the proceedings, the Court must accept as true the underlying factual allegations in Plaintiff's Second Amended Complaint and draw all reasonable inferences in her favor.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).  Jason was born in Wenzhou City, in the People's Republic of China on August 3, 1974.  On February 6, 1992, Jason entered the United States lawfully as a 17-year-old minor with his parents and minor sister on a B-2 visa.  Jason graduated from Long Island City High School in Queens, New York, and worked his way through community technical college, becoming a Microsoft certified systems engineer.  Jason married Plaintiff, a

---

next friend of their minor children and the beneficiaries of Jason's Estate, Raymond and Johnny Ng.

permanent legal resident of the United States and now a naturalized citizen, on February 9, 2001. Their sons, Raymond and Johnny, were each born in New York City in 2004 and 2006, respectively.

Sometime in 1994 Jason's parents applied for asylum. Plaintiff alleges that a show cause order, generated by a court from that petition, was never served on Jason and was never filed in Immigration Court. Thus, Plaintiff alleges that Jason had no actual or constructive knowledge of the order and, therefore, he did not appear at the hearing. Plaintiff alleges another notice was sent to an incorrect address in 2000, and during a subsequent hearing in 2001, Jason was ordered removed from the United States in absentia.

After Michelle and Jason married in 2001, Michelle filed a petition on behalf of her husband. Five years later, Michelle re-submitted the petition and an interview was scheduled regarding adjustment of Jason's status on July 19, 2007. Days prior to this scheduled interview, Jason became aware of the prior deportation order and had his attorney file a motion to reopen his removal proceedings.

Jason appeared as scheduled on July 19, 2007, and was promptly arrested on the basis of the deportation order that had issued six years earlier. Plaintiff alleges that her petition had also been approved around this time. Jason spent the night

in an ICE facility in New York and the next day was transferred to a private facility owned by Central Falls Detention Facility Corporation ("CFDFC") in Rhode Island, known as the Wyatt Detention Center.  On January 10, 2008, Jason was transferred to Franklin County House of Corrections in Greenfield, MA.  Plaintiff alleges that sometime in April 2008, Jason began to complain of severe medical problems including back pain, skin irritation, and tiredness.  In April, 2008, Jason was again transferred, this time to the Franklin County Jail in Vermont, and in July 2008, Jason was transferred back to Rhode Island.

After a battle where Jason, his lawyers, and his family repeatedly demanded medical attention for Jason with no success, on July 29, 2008, Jason's attorney filed a writ of habeas corpus before this Court.  See C.A. No. 08-285S.  Immediately after this filing, on July 30, 2008, Plaintiff alleges that ICE officials ordered Jason to be transported to Hartford, Connecticut from Rhode Island.  Jason was transported by van to meet with ICE officials, who Plaintiff alleges "attempted to put undue pressure on [Jason] to withdraw all pending appeals in his case and accept deportation."  (Pl.'s Second Am. Comp. ¶ 94.)  Jason was then handed over to CFDFC staff and transported back to Rhode Island.

On July 31, 2008, this Court held a chambers conference with counsel concerning the petition.  The next day Jason was

4

taken to Memorial Hospital where he was diagnosed with terminal liver cancer. In addition to the cancer, which had spread throughout his entire body, he also suffered from a fractured spine, a small IVC clot, and multiple bruises. Jason was then transferred to Rhode Island Hospital, where he died on the night of August 6, 2008.

Plaintiff first filed an administrative notice in accordance with the requirements of the FTCA. This was followed by the filing of a complaint where she alleged various theories of liability against numerous defendants including CFDFC, Unknown United States Immigration and Customs Enforcement Officials, and the United States.[2]

---

[2] The other Defendants include Wayne T. Salisbury, Jr., Timothy E. Tapley, Benjamin Ray Candelaria, Jr., Dean Mougenot, Maureen Medeiros, Alfred Beneduce, Pedro Sanchez, Frank J. Botelho, Patrick Levesque, MD, John Riedel, MD, Unknown Wyatt Correctional Officers, Unknown Wyatt Medical Staff, Unknown Wyatt Administrators, AVCORR Management, LLC, Anthony Ventetuolo, Jr., Cornell Companies, Inc., Cornell Corrections of Rhode Island, Inc., Unknown Cornell Companies, Inc. Staff, Unknown Cornell Corrections of Rhode Island, Inc. Staff, Franklin County House of Corrections, Franklin County Sheriff's Office - Greenfield, Massachusetts, Frederick B. MacDonald, Franklin County Jail, Franklin County Sheriff's Office; Robert W. Norris, Unknown Franklin County House Of Corrections Staff, Unknown Franklin County Sheriff's Office – Greenfield Staff, Unknown Franklin County Jail Staff.
     Franklin County Sheriff's Office of Greenfield, MA, Franklin County House of Corrections, and Sheriff Frederick MacDonald also filed motions to dismiss Plaintiff's complaint on for lack of personal jurisdiction. Prior to the hearing, these parties were voluntarily dismissed.

Prior to the hearing, Plaintiff dismissed some of her claims against the United States[3] leaving only Count Fifteen, brought pursuant to the FTCA, to be tested by Defendant's motion.  Plaintiff alleges in her Second Amended Complaint that "[a]ll conditions precedent to this lawsuit have been performed or have occurred, including providing pre-suit notice to the Defendant. . . [and] [s]ix months have elapsed from the date a pre-suit claim was filed."  (Pl.'s Second Am. Compl. ¶ 228.) Plaintiff's theory is that Defendant United States is liable pursuant to the FTCA, for "careless[] and negligent[]" actions. Plaintiff continues to allege a laundry list of allegations on the part of Defendant conducted "by and through its agents, servants, and employees."  (See Pl.'s Second Am. Compl. ¶ 229 (a-j).)

---

[3] Plaintiff dismissed Count 16, and withdrew her claims that the United States did not provide Jason with notice and due process.  Plaintiff notes that Defendant United States did not move to dismiss Counts 4, 7, or 8, which are claims against the "unknown ICE officials."  These counts represent Bivens claims for deliberate indifference to medical needs, for wrongful detention and imprisonment, and for cruel and unusual punishment.  See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  "In Bivens . . . this Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1947-48 (2009) (quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001)).  Thus, the Court need not address these claims.

The United States moves pursuant to Rule 12(b)(1) and 12(b)(6), arguing that Plaintiff lacks subject matter jurisdiction to bring her claims and that her claims fail to state a claim upon which relief can be granted. In particular, Defendant argues that (1) the administrative notice requirements of the FTCA have not been met; (2) Defendant did not waive its sovereign immunity insofar as Count Fifteen relies upon the conduct of independent contractors; and (3) the negligence claim does not state a claim upon which relief can be granted.

III. Standard of Review

"Unlike a Rule 12(b)(6) motion, 'no presumption of truthfulness attaches to jurisdictional allegations challenged by a Rule 12(b)(1) motion." Hoover v. Gershman Inv. Corp., 774 F. Supp. 60, 63 (D. Mass. 1991) (quoting Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1235-36 (1st Cir. 1991)). Thus, Plaintiff has the burden to show that subject matter jurisdiction exists. Id.

If Plaintiff can show that the Court has jurisdiction, Rule 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. This must include sufficient factual matter to state a claim that is "plausible on its face" and which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937,

7

1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Of course, plausibility is "'context-specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). In a nutshell, the complaint must supply enough to push a plaintiff's claims past the "sheer possibility" threshold -- from merely conceivable or speculative to actually probable or plausible. Iqbal, 129 S. Ct. at 1949-50.

IV. Analysis

   A.   Administrative Requirements of the FTCA

The FTCA provides a limited waiver of the United States' sovereign immunity whereby private citizens may sue the United States for particular claims after meeting specific threshold requirements. These requirements are jurisdictional prerequisites for the Court: without them Defendant's immunity will continue to bar Plaintiff's claims. The United States first argues that Plaintiff failed to allege certain facts in her administrative notice, which she now asserts in the Second Amended Complaint. Defendant argues that this oversight is fatal because it constitutes a waiver of her claims. Defendant rightly points out that a harsh consequence may be appropriate because "[f]ailure to timely file an administrative claim with the appropriate federal agency results in dismissal of the

plaintiff's claim, since the filing of an administrative claim is a non-waivable jurisdictional requirement." <u>Santiago-Ramirez v. Sec'y Dep't of Defense</u>, 984 F.2d 16, 18-19 (1st Cir. 1993) (citing <u>United States v. Kubrick</u>, 444 U.S. 111, 113 (1979)).

Here, it is undisputed that Plaintiff filed the administrative notice and made a demand for the sum certain amount of $30,000,000. Defendant's grievance, however, centers upon the level of detail outlined in Plaintiff's notice when it was initially filed. In particular, the United States takes issue with Plaintiff's allegations that: (1) the United States failed to conduct a 120-day review per 8 CFR § 241.4(c)[4]; and, (2) it ordered Jason's transfer to Hartford, Connecticut. Defendant argues that because neither fact was pled in the original administrative notice, Plaintiff's claims based on these facts have been waived.

---

[4] Plaintiff's reliance upon 8 C.F.R. 241.4(c), which deals with the "[c]ontinued detention of inadmissible, criminal, and other aliens beyond the removal period[,]" may well be misplaced. Plaintiff has failed to cite with precision where any purported right to a 120-day review exists within these complicated regulatory provisions. This Court's review of the sections dealing with the timing of reviews does not reveal the source of this alleged right. Indeed, during argument Defense counsel raised the legal invisibility of this alleged review requirement. As discussed later in this opinion, because Plaintiff has backed away from the position that liability is premised upon a violation of a specific "right to review," in favor of a more general theory of negligence, this lack of authority is not a problem. Moreover, these general guidelines may still have relevance insofar as they may or may not have been followed in Jason's case.

Plaintiff's counsel indicated during the hearing on this motion that the Second Amended Complaint was attached to the initial notice on November 10, 2009, as an act of amendment. Plaintiff also pointed out that there was still time available to cure any defects and re-file another notice, should the Court deem it necessary.  In the Court's view, Plaintiff has met her burden to demonstrate that the jurisdictional prerequisites have been met because the amended notice necessarily incorporates all the allegations in the Second Amended Complaint.  Moreover, even if the Court found the filings somehow lacking, Plaintiff could merely amend her notice.  This, of course, would result in significant time, expense, and delay, only to bring the case back to its present posture once more.

Even if the amendments to the notice were somehow defective, the case law supports the conclusion that Plaintiff has met the notice requirement of the FTCA.  The First Circuit approaches the notice requirement of the Federal Tort Claims Act with leniency and has stated that it is satisfied so long as "a claim form or 'other written notification' [] includes (1) sufficient information for the agency to investigate the claims, and (2) the amount of damages sought." Santiago-Ramirez, 984 F.2d at 19 (citing Lopez v. United States, 758 F.2d 806, 809-10 (1st Cir. 1985) and other cases).  The Court takes a flexible approach toward the notice requirement because the purpose of

the requirement is to "allow[] the efficient investigation of a claim by the agency without sacrificing the entitlement of a claimant to his or her cause of action against the government." Id. Indeed, "the emphasis is on the agency's receipt of information: it must have enough information that it may reasonably begin an investigation of the claim. 'Our decision in Corte-Real supports saving a claim that is flawed, when the government's investigatory needs are satisfied.'" Id. (quoting Kokaras v. United States, 980 F.2d 20, 23 (1st Cir. 1992)).

The case law does not require that every single factual allegation must be in the administrative notice. Moreover, there is no indication that the United States has been prejudiced because these two facts were not fleshed out earlier. Here, the government's investigatory needs were satisfied because the basic facts surrounding Plaintiff's claims were in the initial notice, and all additional factual allegations were subsequently added once the notice was amended. Even assuming some technical defect could be uncovered, this is precisely the type of case that the First Circuit has said is worth saving.

Therefore, because the United States had notice as to the claims against it, and was given ample opportunity to assess whether settlement presented a viable option, Plaintiff has satisfied the administrative notice requirement and has shown that subject matter jurisdiction is not lacking on this basis.

B.  The Independent Contractor Defenses

Defendant next argues that the United States retains its immunity in this case for two other reasons: (1) the negligent parties are independent contractors, not federal employees, thus the United States is immune from liability; and (2) the conduct alleged is not a tort for which a private party could be liable under state law.  Indeed, the FTCA provides a limited waiver of the United States' sovereign immunity for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" and only "to the same extent as a private party for torts of its employees acting within the scope of their employment."  Brooks v. A.R. & S. Enters., Inc., 622 F.2d 8, 10 (1st Cir. 1980) (citing 28 U.S.C. § 1346(b) and United States v. Orleans, 425 U.S. 807, 813 (1976)).

Defendant correctly states the general principle that the United States may not be held liable pursuant to the FTCA based upon the conduct of its independent contractors.  See Larsen v. Empresas El Yunque, Inc., 812 F.2d 14, 16 (1st Cir. 1986).  Based upon this, Defendant argues that where Plaintiff alleges in the Second Amended Complaint that the United States should be liable for the actions of the co-Defendants, including CFDFC and its employees and staff or any other private facility, this is impermissible because they are not United States employees or

agents. See id. During the hearing, it quickly became evident that Plaintiff's Second Amended Complaint caused confusion because most of the conduct alleged in paragraph 229 against the United States (see ¶ 229 parts (e)-(j)) actually described conduct of the other Defendants. Plaintiff readily conceded that the persons and entities responsible for Jason's day-to-day experience in the private facilities, including CFDFC and its staff, are not United States employees or agents as defined in the FTCA or common law. See 28 U.S.C. § 2671; Larsen, 812 F.2d at 15 (quoting Orleans, 425 U.S. at 814) (the United States does not have the supervisory authority or control over the "detailed physical performance of the contractor" necessary to create such an agency relationship).

Plaintiff, having conceded that the United States can only be on the hook for its own conduct, points to parts (c) and (d) as evidence of the direct negligence of the United States.[5] In particular, the Plaintiff alleges that the United States was notified of Jason's deteriorating condition by letter, and at the latest, when federal officials met and spoke with him in

---

[5] Paragraph 229(c) provides: "Failing to conduct a custody review despite federal regulations that require that ICE to conduct a custody review within 120 days to determine whether to release or continue to detain a person, or refer them to the Post-Order Detention Unit (8 C.F.R. §241.4(c))[.]" Paragraph 229(d) provides: "Ordering Mr. Ng to be transported to Hartford, Connecticut from Wyatt despite his physical condition on July 30, 2008[.]"

13

Hartford.  Moreover, after the United States was aware, or should have been aware, of Jason's deteriorating medical condition, it acted negligently when it ordered Jason's transfer to Hartford, his transfer back to Rhode Island into the custody of CFDFC, and when it improperly reviewed the basis for his custody and detention.

While the Court agrees that the United States retains its immunity insofar as any of Plaintiff's allegations are based upon the actions of its co-Defendants (including CFDFC and its employees) the Second Amended Complaint includes allegations that the United States acted negligently in its own right. Thus, Count Fifteen as a claim for direct negligence, passes muster at this stage, if only by a thin reed.  For these reasons, the Court concludes that Defendant's motion to dismiss Plaintiff's direct claim of negligence, on the basis of the independent contractor defense, must be denied.

    C.   Negligence pursuant to the FTCA

The FTCA also requires that "plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred, and his allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action." Abreu v. United States, 468 F.3d 20, 23 (1st Cir. 2006) (quoting Dorking Genetics v. United States, 76 F.3d 1261, 1266 (2d Cir. 1996)).

In its brief and during oral argument, Defendant attacked each allegation in Count Fifteen as if each represented a separate cause of action. During oral argument, however, Defendant agreed that Plaintiff's claim sounds in negligence, and the allegations are offered collectively as specific incidents or evidence of that negligence.[6]

The Court must take the allegations in the Second Amended Complaint as true. Here, Plaintiff alleges sufficient facts to support that it was negligent for ICE to act as it did after it was put on notice of Jason's condition. Indeed, Plaintiff paints a harrowing picture in her Second Amended Complaint, which includes allegations of specific conduct by the United States that if proven arguably falls below the standard of care. Whether the evidence actually supports that the conduct occurred and breach can be established as a matter of law are issues that must be tested on summary judgment or at trial. For now, however, Plaintiff alleges enough to proceed on her claim of negligence.

---

[6] Defendant briefly asserted in passing during the hearing that it does not owe any duty to its detainee, and that the evidence does not support breach any alleged duty; but none of these arguments were briefed and no authority was offered for this position. Furthermore, the Court disagrees that Plaintiff failed to allege these elements. Whether the evidence supports breach is another matter and may be raised on summary judgment after discovery is completed and the Court has a developed record.

15

V.   Conclusion

For the foregoing reasons, the Defendant United States of America's motion to dismiss Plaintiff's Second Amended Complaint is DENIED.

IT IS SO ORDERED:

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  June 14, 2010